559 So.2d 954 (1990)
Sandra CARAWAY, Individually and on Behalf of the Minor, Amanda Christine Spraggins, Appellee,
v.
ROYALE AIRLINES, INC., et al., Appellants.
No. 21395-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 1990.
Rehearing Denied May 3, 1990.
*955 Henry N. Brown, Jr., for appellee.
Reynolds & Zinna by Randy P. Zinna, Baton Rouge, for Royale Airlines Inc. Employee Benefit Plan and Trust, appellant.
Cook, Yancey, King & Galloway by Kenneth Mascagni, Shreveport, for City of Bossier City, appellant.
Before FRED W. JONES, Jr., SEXTON and HIGHTOWER, JJ.
FRED W. JONES, Jr., Judge.
In this action by plaintiff, Sandra Caraway, individually and on behalf of the minor child, Amanda Spraggins, for health insurance benefits allegedly due for medical expenses incurred on behalf of the minor child, defendants, City of Bossier City (hereinafter referred to as CBC) and Royale Airlines Incorporated Employee Benefit Plan and Trust (hereinafter referred to as Royale Plan) appealed the judgment of the trial court finding both insurers to be primary insurers and awarding the disputed medical expenses together with statutory penalties and attorney's fees. Plaintiff answered defendants' appeal, seeking an increase in attorney's fees. For the reasons stated herein, the judgment of the trial court is affirmed in part, amended in part and reversed in part.
Issues Presented
On appeal, defendants present the following assignments of error:
1) The trial court erred in construing the CBC Plan to provide primary coverage to the minor child;
2) The trial court erred in assessing an award of penalties and attorney's fees against CBC; and,
3) The trial court erred in assessing statutory penalties against the Royale Plan as the provisions of La.R.S. 22:657 are preempted by the Employee Retirement Income Security Act (ERISA).
Factual Context
Plaintiff, Sandra Caraway, was married to Charles Spraggins and of this marriage, the minor child, Amanda Spraggins, was born on July 24, 1980. After her birth, Amanda was diagnosed as having Crouzon's syndrome, a congenital deformity.
*956 Briefly stated, Crouzon's syndrome is the premature closure of the facial and cranial sutures which gives rise to a lack of normal growth of the cranial-facial region. Instead of the skull and face growing in a normal fashion, it grows in a steeple shape. The syndrome also affects the upper and lower jaw and eye orbits. These patients are characteristically "bug-eyed" and frequently their teeth and jaws do not come together, causing speech and other related problems. Crouzon's syndrome can significantly damage eyesight or cause blindness due to pressure on the optic nerves and can also cause mental retardation because the compression of the skull limits room for the normal growth of the brain.
In Amanda's case, all of the cranial sutures and many of the facial sutures were involved. Amanda was operated on three times within the first year after her birth, at the age of four weeks, four months and one year.
On September 6, 1983 plaintiff and Charles Spraggins were divorced and were granted joint custody of Amanda, with plaintiff designated as the primary residential custodian. Both parents were ordered to maintain hospitalization and major medical coverage on the minor child and to equally share in the payment of all medical expenses which were not covered by insurance.
Plaintiff became employed by Royale Airlines, Inc. on April 30, 1984 and was covered by an employee benefit plan and trust for group insurance provided by the airline, which coverage included the minor child. The Royale policy was an ERISA plan. Charles Spraggins was employed by CBC as a police officer in August, 1983 and was covered by an employee benefit plan and trust for group insurance provided by CBC, which plan also included coverage for the minor child. Insurance Management Administrators of Louisiana, Inc. (hereinafter referred to as IMA) was the third-party administrator of the Royale Plan and Group Administrators, Inc. (hereinafter referred to as GA) was the third-party administrator of the CBC Plan.
It appears that in 1985 and 1986 Amanda received medical care for her various congenital problems. In spring 1986 plaintiff presented a request for payment for the various treatments to GA. Sandra Bullock, claims adjuster for GA, contacted Jean Moseley, claims adjuster for IMA, to discuss the order of benefits determination and which plan would be primary. After examining the provisions of both policies in light of the divorce decree, IMA accepted primary coverage responsibility and paid the claims for the benefits. In February, 1986 it was determined that Amanda was in need of further surgery. Plaintiff attempted to pre-clear the surgery with both insurers but benefits were denied by IMA on April 7, 1986. Plaintiff appealed this decision and in the interim the surgery was required to be delayed. On July 14, 1986 GA found the CBC Plan would extend coverage as the secondary plan.
Amanda had the recommended surgery on July 30, 1986. Her surgeons classified the cranio-facial remodeling surgery as medically necessary and not solely for cosmetic purposes. During the course of the surgery, Amanda suffered a tear of the sagittal sinus, the large main blood vessel in the center of the brain, resulting in voluminous blood loss. The situation was potentially lethal and due to the life-threatening injury, all attempts at the proposed surgery were abandoned and the focus centered solely on saving Amanda's life. Amanda required further hospitalization and surgeries in August, September and October, 1986, all of which were related to the tear of the sagittal sinus and the subsequent problems which developed as a result of this injury. As a consequence of these surgeries and medical treatment for the serious medical complications, Amanda incurred total medical expenses of $78,165.65.
On December 18, 1986 IMA formally denied plaintiff's claim for benefits, finding that the medical services rendered were for the treatment of a congenital defect and as plaintiff was not a covered employee under the Royale Plan at the time of the birth of the child, no expenses were considered coverable. The CBC Plan, as the secondary *957 plan, paid the sum of $1166 in benefits, the amount allegedly due under the CBC's Plan non-duplication of benefits provision.
On February 20, 1987 plaintiff instituted this action for health insurance benefits naming as defendants, Royale Airlines, Inc., CBC and Charles Spraggins. Plaintiff alleged both defendants, Royale Airlines, Inc. and CBC, had in force a policy of health and hospitalization insurance covering Amanda and these policies were in effect through the entire year of 1986. Plaintiff contended Amanda was required to undergo medical treatment in 1986 and was fully covered by both employee benefit group insurance plans. Plaintiff asserted she was entitled to judgment against the defendants for the full sum of all benefits due and was further entitled to recover from defendant, Charles Spraggins, all sums not covered by the hospitalization plans or alternatively, one-half of those charges. Plaintiff alleged claims were made with IMA and GA and that IMA had specifically denied any coverage and CBC claimed it only had secondary liability and paid less than five percent of the charges. Plaintiff charged that the failure and refusal to pay was arbitrary, capricious and without probable cause and defendants should be cast with statutory penalties and reasonable attorney's fees.
On May 13, 1987 plaintiff amended her petition to name the Royale Plan as a defendant alleging it was the plan administrator for insurance provided by Royale Airlines, Inc. Due to the bankruptcy of Royale Airlines, Inc. and the issuance of an automatic stay order, Royale Airlines, Inc. was no longer a party to the action.
CBC filed a cross-claim naming the Royale Plan as defendant and alleging that, as provided in the coordination of benefits clauses in both plans, the CBC Plan was secondary to the Royale Plan which provided primary coverage for Amanda's medical expenses. CBC alleged that should it be held answerable for any claims beyond the secondary coverage previously paid, then it was entitled to full indemnification from the Royale Plan.
At the trial on the merits, Sandra Bullock, former claims adjuster for GA, testified Amanda was covered under the CBC Plan as a dependent of Charles Spraggins. Bullock said the CBC Plan had never paid any of Amanda's medical expenses as primary carrier. In connection with Amanda's surgeries in 1986, CBC agreed that the surgeries would be covered as medically necessary according to the plan but only as a secondary carrier. Bullock stated that the coordination of benefits clause in the CBC Plan provided that plan would have secondary liability. When contacted by plaintiff for the payment of benefits, Bullock communicated with Jean Moseley, the claims adjuster for IMA, in order to discuss the order of benefits determination since there was a joint custody divorce decree. Bullock stated industry practice dictated that the insurance carrier of the parent who provided residential custody of the child and claimed the child for income tax purposes would be the primary. In this case it would be the Royale Plan because plaintiff was the residential custodian and claimed the child for income tax purposes.
Jean Moseley, claims manager with IMA, testified that after obtaining medical information it was determined the charges for the proposed surgery were not covered by the Royale Plan. As a result of plaintiff's appeal of that decision IMA sought additional medical information. Moseley said when plaintiff took Amanda for surgery in July, 1986 she had a denial of benefits that was being reconsidered. Later, plaintiff's claim was officially rejected. Moseley stated this refusal was based on the language of the plan document which provided it would not cover the correction of a congenital defect of a child born while the parent was not covered under the plan. At the time of trial, IMA had not paid any of the claims for the surgeries.
Mary Smith, President of IMA, testified that in this particular case where both parents had joint custody of the minor child and an obligation to maintain insurance, there was nothing in the Royale Plan which made it primary, but rather Smith considered both insurers to be primary carriers *958 and would coordinate benefits on this basis.
The pertinent clauses of the Royale Plan are as follows:
Double Coverage: Since it is not intended that an Eligible Person receives greater benefits than the actual Medical Expenses incurred, any coverage such person has under "other plans" will be taken into account in determining the amount of benefit payable under this Plan.
Specifically, this Plan will pay either its regular benefits in full, or a reduced amount which, when added to the benefits available under the other plan or plans will in most cases equal 100% of the allowable Covered Medical Expenses.
One of the two or more plans involved is the Primary Plan and the others are Secondary Plans. The Primary Plan pays benefits first and without consideration of the other Plans. The Secondary Plans then make up the difference up to the total allowable Covered Medical Expenses. No plan will pay more than it would have paid without this special provision. If one plan has no coordination of benefits provision, it automatically is the Primary Plan. For example, a plan may be Primary if it covers the individual as an employee and Secondary if it covers the individual as a dependent. If the individual is covered as a dependent under two or more plans, the plan which covers such individual as a dependent of a male person is Primary. However, if a dependent is covered by parents who are divorced, the plan of the parent who has custody of the dependents shall be Primary unless otherwise stated by the courts.
The pertinent clause of the CBC Plan provides:
NON-DUPLICATION OF BENEFITS: The determination of medical care or dental care benefits payable under this plan will take into account any benefits payable under any other group insurance or blanket, prepayment, franchise-group, governmental or other benefit plan described in the Group Policy, except Medicaid.
Benefits under this plan may be reduced so that the total benefits paid under all plans combined does not exceed 100% of the covered charges made for medical care or dental care.
After examining the evidence, the trial court noted that the first issue was whether the Royale Plan excluded coverage for congenital defects without regard to the cosmetic purpose of treatment pursuant to the cosmetic policy exclusion provision. According to the interpretation adopted by the Royale Plan, the last phrase of that exclusion barred recovery since neither parent was covered under the Royale Plan when Amanda was born, even though the surgery was not for cosmetic purposes. After examining the policy provision, the trial court rejected the interpretation by the Royale Plan and found the surgery was covered. The court concluded the treatment and surgeries for Amanda were not for cosmetic purposes but were medically necessary and thus the exclusion did not apply to prevent coverage. It held that the denial of benefits by the Royale Plan was arbitrary, capricious and inconsistent with the purpose of the plan to provide coverage for medical necessities of the plan members.
With reference to whether the CBC Plan provided secondary coverage, the court found the CBC Plan was primary and not secondary. It noted there was no language in the CBC Plan that referred to only providing secondary coverage. The provision relied upon by CBC was the "Non-Duplication of Benefits" clause which the court found was intended to apply where there is more than one plan which provides benefits so that total payments will be limited to 100% of the claim. The court held it was not intended to be used as a vehicle to reduce coverage below 100% for an employee or dependent and any such effort should be construed against CBC, the drafter of the plan. Since the CBC Plan had no specific language in the plan document it had prepared, the language must be construed against it. Therefore, coverage under the CBC Plan was also primary.
*959 The court further noted the CBC Plan sought to rely on language in the Royale Plan which provided if a dependent was covered by parents who were divorced, the plan of the parent who had custody of the dependent would be primary unless otherwise stated by the courts. The court found this provision was ambiguous when applied to the facts of this case.
Finally, the court concluded that the failure of the CBC Plan to pay the claims of plaintiff for medical expenses which were properly submitted was also arbitrary, capricious and without reasonable grounds. It assessed penalties of double the amount of recoverable benefits, $77,965.65, and an award of attorney's fees in the amount of $10,000. The court found both insurers were solidarily liable and both plans contained subrogation clauses. Therefore, plaintiff could recover the entire claim plus penalties, interest and attorney's fees from CBC and under its cross-claim against the Royale Plan, CBC would be entitled to a judgment for one-half of the total amount it had to pay to plaintiff, including the penalties and attorney's fees.
Liability of CBC
An insurance policy is a contract between the parties and the rules established for the construction of written agreements also apply to contracts of insurance. The intention of the parties is of paramount importance in interpreting insurance contracts. Their intention is to be determined in accordance with the plain, ordinary and popular sense of the language used in the agreement and by giving consideration on a practical, reasonable and fair basis to the instrument in its entirety. An insurance contract should not be given an interpretation which would act to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or which would lead to an absurd conclusion. Courts do not have authority to change or alter the terms of an insurance policy under the guise of interpretation when such terms are couched in clear and unambiguous language. It is well-settled that ambiguous clauses in policies of insurance are to be construed against the insurer and in favor of the insured. In order to be ambiguous an insurance contract must not be only susceptible of two or more interpretations but both interpretations must be equally reasonable. Dear v. Blue Cross of Louisiana, 511 So.2d 73 (La.App. 3d Cir. 1987); Bingham v. St. Paul Insurance Company, 503 So.2d 1043 (La.App. 2d Cir. 1987); Coates v. Northlake Oil Company, Inc., 499 So.2d 252 (La.App. 1st Cir.1986), writ denied, 503 So.2d 476 (La.1987), and Harvey v. Mr. Lynn's, Inc., 416 So.2d 960 (La.App. 2d Cir.1982).
On appeal, CBC argues that the trial court erred in finding it to be a primary carrier. CBC contends that its plan is a secondary plan as contemplated by the Royale Plan. It points to the language in both plans covering the coordination or non-duplication of benefits and specifically the language in the Royale Plan that provides if a dependent is covered by parents who are divorced, the plan of the parent who has custody shall be primary unless otherwise stated by the courts. CBC argues it is clear in this case that plaintiff is the residential custodian of the minor child, providing for her day-to-day care and exercising complete authority. CBC asserts that under the clear and unambiguous language of the Royale Plan, it should be designated as the sole primary plan. CBC contends that even if this language was found to be ambiguous, the trial court erred in construing this ambiguity against the CBC Plan rather than against the Royale Plan, the drafter of the instrument.
Plaintiff contends and the trial court found that both plans should provide primary coverage for these medical expenses.
The pertinent language of both policies clearly indicates that a coordination of benefits was anticipated by the insurers in the event of multiple coverage. However, it is equally clear that the purpose of the coordination and non-duplication of benefits clauses in both plans were intended to prevent the insured from recovering more than the medical expenses actually incurred and were not intended to thwart the beneficiary's recovery of 100% of the medical expenses incurred. Therefore, in interpreting the interaction of these policy provisions, *960 we must endeavor to satisfy the parties' intent of 100% coverage while avoiding an interpretation which would result in excessive payments to the insured.
The pertinent language in the Royale Plan, as quoted above, provides a more detailed outline of the coordination of benefits where multiple policies exist. The insured person at issue here, Amanda, was covered as a dependent under the Royale Plan. The last sentence of the coordination of benefits clause provides if a dependent is covered by parents who are divorced, the plan of the parent who has custody of that dependent shall be primary unless otherwise stated by the courts. The parties disagree as to the interpretation of this sentence. Plaintiff argues that since the court ordered joint custody and both parents to provide medical insurance, both insurance plans should be considered as "primary". CBC contends, however, that in a joint custody situation the primary residential custodial parent should be considered to be the parent who has custody for the purposes of interpreting the Royale Plan. The trial court found that this provision was ambiguous, and in any event, did not operate to designate either plan as primary or secondary. We agree the provision is ambiguous in joint custody situations. When such ambiguity is strictly construed against the insurer, it necessitates the finding that the Royale Plan is "primary". We note, however, that the finding of ambiguity and the consequences thereof are of little significance in this situation as the most reasonable interpretation of the plan would likewise lead to the conclusion that Royale, as insurer of plaintiff who was the primary residential custodial parent, is the "primary" insurer.
The CBC Plan does not employ the "primary" and "secondary" characterizations of multiple insurers as the Royale Plan but does provide for the coordination or non-duplication of benefits. Instead of relying on the "primary" or "secondary" characterization, the CBC Plan simply provides that benefits under the plan may be reduced so that total benefits paid under all plans combined does not exceed 100% of the covered charges made for medical care. It is quite significant that the CBC Plan provides for a reduction of benefits only if another plan has paid benefits on the same claim. As the reduction under this plan takes place only where other benefits have been paid, the primary and secondary plan designation is irrevelant. Under the specific facts of this case, as the Royale Plan has not paid any benefits and because Royale is in bankruptcy it is unlikely to pay those benefits, the CBC Plan is not entitled to reduction of its obligation to pay benefits. Rather, under the clear language of the CBC Plan, it would remain liable for these medical expenses until such time as the Royale Plan has paid benefits.
Simply stated, we concur with the trial court's conclusion that as to the insured, both insurers owe an obligation for the immediate payment of these benefits and thus both insurers could be considered "primary". However, in regard to the apportionment of the loss between these insurers, which issue is raised by CBC's cross-claim, the Royale Plan has undertaken the obligation of primary carrier leaving to CBC the role of secondary carrier. The different allocation of loss as between the insurers does not alter or defeat the primary obligation of both insurers to insure that the insured receives 100% of the benefits due.
Having found that both plans have a legal obligation to pay these benefits, the Royale Plan under its self-imposed characterization as "primary" and the CBC Plan under its contractual entitlement to reduction only after benefits have been paid, we affirm the trial court's judgment in favor of plaintiff and against both insurers for the full amount of recoverable medical expenses incurred by Amanda.
Imposition of Statutory Penalties and Attorney's Fees Upon CBC.
La.R.S. 22:657(A) provides, in pertinent part:
All claims arising under the terms of health and accident contracts issued in this state ... shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the *961 form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist ... Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court ...
Penalties and attorney's fees are to be assessed against an insurer who fails to pay a claim without just and reasonable grounds such as would put a reasonable and prudent business man on his guard. As to whether or not just and reasonable grounds exist is purely a factual matter and each case must be considered upon its own facts and circumstances. The provisions of the statute are penal in nature and must be strictly construed. These provisions may not be imposed unless the refusal to pay is clearly arbitrary and capricious. Thus the trial court's flexibility to award the statutory penalties is tempered by the nature of the statute itself. Although a beneficiary may ultimately be determined to be entitled to policy benefits, this judicial, determination does not in and of itself justify the imposition of penalties. Where an insurer's interpretation of its policy is reasonable and not contrary to any existing jurisprudence, the denial of the claim is not arbitrary so as to require the imposition of penalties and the insurer has a right to a judicial determination of the issues. While a court may ultimately disagree with the interpretation that the insurer places upon its policy, its actions in refusing to pay should not necessarily subject it to the penalty provisions of the statute. Rippon v. Variable Protection Administrators, Inc., 537 So.2d 262 (La.App. 4th Cir.1988), writ denied, 541 So.2d 833 (La.1989); Colville v. Equitable Life Assurance Society, 514 So.2d 678 (La.App. 2d Cir.1987); Landry v. Louisiana Hospital Service, Inc., 449 So.2d 584 (La.App. 1st Cir.1984); Posey v. Board of Trustees, State Employees Group Benefits Program, 426 So.2d 705 (La.App. 1st Cir.1982), writ denied, 429 So.2d 139 (La.1983) and Lucito v. Louisiana Hospital Service, Inc., 392 So.2d 700 (La.App. 3d Cir.1980).
CBC argues the trial court erred in assessing it with statutory penalties and attorney's fees because it reasonably interpreted the involved plans in accordance with their express provisions and applied those provisions in accordance with past interpretations mutually understood by the plan administrators of both plans. CBC contends that its conclusion it was only secondarily liable was a reasonable interpretation based upon the language in the Royale Plan providing that the plan of the parent who had custody should be primary.
After reviewing the evidence, we find the trial court erred in finding CBC had acted arbitrarily and capriciously in paying benefits as a secondary plan and thus imposing statutory penalties and attorney's fees on this basis. The evidence demonstrated that in 1985 and 1986 Amanda incurred medical expenses which were clearly related to Crouzon's syndrome and after consultation between the two plans, the Royale Plan assumed primary coverage for these expenses. It appears the assumption of primary coverage was based on the language noted previously that the insurer of the custodial parent would be primary. In 1986 when the expenses from the surgeries were incurred, CBC was not unreasonable in relying on the previous interpretation of both plans as providing that the Royale Plan would provide primary coverage. It appears CBC undertook an investigation as to whether these expenses would be covered under both plans and communicated extensively with Amanda's physicians as well as the administrator of the Royale Plan to determine the ranking of policies and the order of payment. CBC estimated the amount of benefits due by it as a secondary plan and these benefits were promptly paid. Further, this matter has been complicated by the bankruptcy of Royale Airlines, Inc. and its apparent lack of funds to pay these benefits. Therefore, under the facts and circumstances of this particular case, we conclude CBC was not arbitrary *962 and capricious in refusing to pay benefits as the primary carrier based upon past interpretation of the two plans by the administrators of both plans and the language of the Royale Plan whereby it undertook primary coverage responsibility.
Imposition of Penalties upon the Royale Plan
On appeal, the Royale Plan argues the trial court erred in imposing statutory penalties as it is an ERISA plan and the provisions of La. R.S. 22:657(A) are preempted. We agree.
In Pilot Life Insurance Company v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the United States Supreme Court noted it was guided by several considerations in determining whether a state law fell under ERISA's saving clause. 29 U.S.C. § 1144(b)(2)(B). The court stated that first it took what guidance was available from a commonsense view of the language of the saving clause itself and, second, made use of the case law interpreting the phrase "business of insurance" under the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq. in interpreting the saving clause. The court noted that three criteria had been used to determine whether a practice fell under the "business of insurance" for purposes of the Act: 1) whether the practice had the effect of transferring or spreading a policyholder's risk; 2) whether the practice was an integral part of the policy relationship between the insurer and insured and, 3) whether the practice was limited to entities within the insurance industry. The court found, because in that case, the state cause of action sought remedies for improper processing of a claim for benefits under an ERISA regulated plan, its understanding of the saving clause must be informed by the legislative intent concerning the civil enforcement provisions provided by ERISA, § 502(a), 29 U.S.C. § 1132(a). The court noted the Solicitor General for the United States as amicus curiae argued that Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) would be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of the claim for benefits and that varying state causes of actions for claims within the scope of § 502(a) would pose an obstacle to the purposes and objectives of Congress. The court agreed and found the conclusion that § 502(a) was intended to be exclusive was supported by the language and structure of the civil enforcement provisions and the legislative history in which Congress declared that the preemptive force of § 502(a) was modeled on the exclusive remedy provided by § 301 of the Labor-Management Relations Act (LMRA) 61 Stat. 156, 29 U.S.C. § 185.
In examining whether a plaintiff was entitled to statutory penalties and attorney's fees pursuant to La.R.S. 22:657(A) in connection with a suit for medical benefits plaintiff claimed due under a policy of health insurance subject to ERISA, the Third Circuit concluded that La.R.S. 22:657(A) was preempted by ERISA. Smith v. Guardian Life Insurance Company, 546 So.2d 320 (La.App. 3d Cir.1989). The Third Circuit examined the U.S. Supreme Court decision in Pilot Life Insurance Company v. Dedeaux, supra, and noted in that case the Court made it clear that the civil enforcement provisions of ERISA as contained in § 502(a) were the exclusive vehicle for actions by ERISA participants and beneficiaries and that various state causes of action which fell within the scope of and/or conflicted with § 502(a) were preempted. The court found La.R.S. 22:657(A) provided a remedy both within the scope of and in conflict with § 502(a) and was thus preempted by ERISA. See also Rasmussen v. Metropolitan Life Insurance Company and Georgia-Pacific Corporation, 675 F.Supp. 1497 (W.D.La. 1987) and Sublett, et al v. Premier Ban-Corp Self Funded Medical Plan, 683 F.Supp. 153 (M.D.La.1988).
Therefore, it appears under the above jurisprudence that the trial court erred in awarding statutory penalties against the Royale Plan since the provisions of La.R.S. 22:657(A) are preempted by ERISA. It is noted and the Royale Plan concedes that an award of reasonable attorney's fees is discretionary with the court pursuant to the civil enforcement provisions of the ERISA *963 statute. 29 U.S.C. § 1132(g)(1). Therefore, the award of attorney's fees against the Royale Plan is affirmed.
Plaintiff has answered the appeal requesting an increase of attorney's fees for service in the trial court as well as attorney's fees incurred on this appeal. Based upon our review of the record, we find the award of $10,000 attorney's fees at the trial level was reasonable and within the trial court's broad discretion. Plaintiff is entitled to additional fees for services rendered on appeal and we increase plaintiff's award of attorney's fees by $500.
Subrogation
We note the CBC Plan is entitled to the right of subrogation against the Royale Plan. The trial court found CBC had a right of subrogation to recover from the Royale Plan one-half of the benefits it had paid to plaintiff. Apparently the trial court reasoned because both insurers were primary they should share the loss on an equal basis. We agree that CBC is entitled to subrogation under Hermann Hospital v. Meba Medical & Benefits Plan, 845 F.2d 1286 (5th Cir.1988) and Misic v. Building Service Employees Health and Welfare Trust, 789 F.2d 1374 (9th Cir.1986). We have found that both insurers owe a primary obligation to the insured for the immediate payment of these medical expenses, but insofar as the apportionment of the obligation between the insurers, the Royale Plan has undertaken responsibility for primary coverage. Therefore, as we have altered somewhat the trial court's apportionment of the obligation between the insurers, we must amend the judgment with regard to the amount of subrogation. As between these two insurers, the Royale Plan has undertaken the obligation to be the primary insurer and CBC must pay these benefits only because they have not been paid by Royale. As the Royale Plan is primary between these two insurers, CBC is entitled to recover 100% of the benefits it pays except for the $1166 paid as a secondary carrier.
Decree
For these reasons, the judgment of the trial court in favor of plaintiff, Sandra Caraway, Individually and On Behalf of the Minor Child, Amanda Spraggins, is AFFIRMED insofar as it found both defendants, City of Bossier City and Royale Airlines Incorporated Employee Benefit Plan and Trust, liable for the immediate payment of the medical expenses incurred by the minor child and requiring the City of Bossier City to satisfy the entire claim. The judgment of the trial court on the City of Bossier City's cross-claim is amended to allow the City of Bossier City to seek recovery of 100% of the amount of benefits paid to plaintiff, except the amount of benefits previously paid in its capacity as a secondary carrier. That portion of the judgment of the trial court assessing statutory penalties and attorney's fees against the City of Bossier City and statutory penalties against Royale Airlines Incorporated Employee Benefit Plan and Trust is hereby REVERSED. That portion of the judgment of the trial court assessing reasonable attorney's fees is hereby AMENDED to assess those fees solely against Royale Airlines Incorporated Employee Benefit Plan and Trust and to increase the amount of fees to $10,500 and as amended, AFFIRMED.

ON APPLICATION FOR REHEARING.
Before FRED W. JONES, Jr., HIGHTOWER, SEXTON, MARVIN and NORRIS, JJ.
Rehearing denied.