United States Court of Appeals,

Fifth Circuit.

No. 91–4361.

Phillip David MOREY, a Representative Underwriter at Lloyd's of London, Individually and on Behalf of All Underwriters Subscribing to Motor Truck Cargo Policy MC4/90294 Plaintiff Counter Defendant–Appellant Cross Appellee,

v.

WESTERN AMERICAN SPECIALIZED TRANSPORTATION SERVICES, INC., Defendant Counter Plaintiff–Appellee Cross Appellant.

Aug. 14, 1992.

Appeals from the United States District Court for the Western District of Louisiana.

Before, BROWN, GARWOOD and EMILIO M. GARZA, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

In this diversity action involving a truck cargo insurance policy, the District Court found on cross-motions for summary judgment that the cargo claims at issue were covered by the policy and the exclusion championed by the insurer did not apply. Additionally, the District Court found that the insurer's denial of coverage, albeit erroneous, was not arbitrary, capricious or made without probable cause and that, therefore, the insured was not entitled to statutory penalties and attorneys' fees. We affirm.

A trucker's tale

Plaintiff–Appellant Philip David Morey (Insurer) represents a number of insurance underwriters at Lloyd's of London (Lloyd's). Lloyd's issued a Motor Truck Cargo Policy (the policy) for Defendant–Appellee Western American Specialized Transportation Services, Inc. (Western), a common-carrier trucking company authorized by the Interstate Commerce Commission to provide trucking services in the 48 contiguous states.[1] The policy, with effective dates of April 14, 1989 to April 14, 1990, covered liability for damage sustained by the cargo Western hauled for its customers.

---

[1] In its Contractor Lease Agreement Western states that it operates under permit MC 171961 issued by the Interstate Commerce Commission.

An exclusion clause in the policy provided as follows:

> This insurance does not insure the liability of the Insured for:—
>
> (m) Loss or damage otherwise recoverable hereon unless
>
>> (a) [i] the trucks are owned by the Insured, or [ii] leased by him for his exclusive use, AND [iii] providing the trucks are operated exclusively by [iv] the Insured [v] and/or his own full time salaried employees[2]
>>
>> or
>>
>> (b) the trucks are operated by owner operators who are under lease to the Insured for a period of 30 consecutive days or more.

Since its own fleet of company-owned trucks is relatively small, Western frequently leases trucks and trailers from various owners in order to transport and deliver its customers' cargo. In some instances, the owner of the Western-leased truck actually drives the vehicle. Often, however, the owner of the leased truck provides a separate driver to move the trailer and its cargo.

In the lease contracts executed by Western and the truck owners on these occasions, the lease provided that the driver was to be an independent contractor with respect to Western, not an employee.[3] The driver, however, had to be approved by Western, took his orders from Western, and was eligible to participate in Western's health and life insurance plans by paying his own premiums as an "affiliate" rather than an "employee." These non-owner drivers were not provided any of the other employee benefits Western furnished to its regular employees, e.g., vacation pay or sick leave, nor were they paid on an hourly or salaried basis as were Western's employees. Instead, Western paid these drivers a percentage of the truck owner's "share of freight."

---

[2]Brackets inserted for ease of reference as to clauses [i] through [v].

[3]Section 16 of the lease provided as follows:

> This agreement is intended to create the relationship of CARRIER and independent contractor, not an EMPLOYER/EMPLOYEE relationship. Neither the OWNER, nor its employees are to be considered employees of the CARRIER, at any time, under any circumstances or for any purpose. Neither party is the agent of the other and neither party shall have the right to bind the other by contract or otherwise except as herein specifically provided.

On six occasions during the effective dates of the policy, Western-leased trucks driven by non-owner drivers suffered cargo damage. Western's claim of coverage for each loss was denied by Insurer on the basis of the policy's exclusion clause.

Convoy to the courthouse

No doubt anticipating an impending legal challenge, the Insurer struck first and filed a complaint seeking a declaratory judgment that five, later amended to include all, of Western's six claims were not covered by the policy. Western, contending that the exclusion did not apply, asserted also a counterclaim against Insurer for statutory penalties and attorneys' fees. The counterclaim alleged that Insurer, in denying coverage under the policy, had acted arbitrarily, capriciously or without probable cause, thus violating Louisiana Revised Statutes § 22:658. With each side's legal pedal to the metal, the parties filed cross-motions for summary judgment.

The district court (i) denied Insurer's motion for summary judgment, (ii) granted Western's motion for summary judgment as to coverage of all six claims, and (iii) denied Western's motion for summary judgment as to penalties and attorneys' fees. Their rest stop finished, both parties find themselves on the road again, this time to appeal the denial of their respective motions.

"Operate" defined

Our task requires us to interpret a key term in the cargo policy. Specifically, we must define the policy term "operate" as it appears in Exclusion (m). We direct our attention, therefore, to subparagraph (a), clauses [i] through [v] of the exclusion clause.

The policy exclusion does not apply if, *inter alia,* [i] the trucks are owned by Western or [ii] leased by Western for its exclusive use AND [iii] providing the trucks are operated exclusively by [iv] Western [v] and/or Western's own full-time salaried employees. Recognizing that the requirement of clause [ii] is fulfilled, both parties agree that the trucks were leased by Western for its exclusive

use. The duel arises, however, over clause [iii] because each party disagrees as to the proper definition and scope of the term "operated."

The Insurer argues for a restrictive definition of "operated" (i.e., "driven") and claims that the trucks were not operated by Western since they were, instead, driven by non-company employees. That is, the Insurer declares that "operate" as used in clauses [iii] and [iv] can have no meaning other than "to drive." Accordingly, forgetting that a corporation is incapable of physical action, Insurer maintains that Western is provided coverage under the phrase "operated exclusively by the Insured" only if the assured actually put its corporate hands on the steering wheel, pressed its corporate foot on the accelerator, and caused the trucks to function "by direct personal effort."

In de-emphasizing that the insured need not always be a corporation, the concurrence is correct that "the policy, however, appears to contemplate the ... possibility that the [I]nsured may be an individual,"[4] but that likelihood does not either justify or compel a different definition of the term "operate."

Western, travelling the other side of the white line, argues for a broader definition of "operated" (i.e., put or kept in operation) and claims that, although literally driven by individuals (as, of course, they must be), the trucks were, in the contemplation of the policy, operated or controlled exclusively by Western.

Rejecting Insurer's restrictive definition, the District Court interpreted Exclusion (m) in Western's favor stating:

The second requirement [of Exclusion (m) ] is satisfied if the trucks are operated *either* by

---

[4]The concurrence points out the unchallengeable fact that "paragraph (a) uses the personal pronoun "him' and "his,' not "it' or "its' as would be appropriate if all [I]nsureds were corporations."

Western American *or* by one of its full time salaried employees. Western American exercised exclusive authority in dictating the movements of the trucks and their cargo; the drivers simply took orders from Western American. Under these circumstances, the trucks were "operated exclusively by the Insured' as contemplated by the policy language. Thus, ... the exclusion is inapplicable, and the losses at issue are covered (emphasis in original).

District Court's Ruling at p. 3.

We review the District Court's interpretation of Exclusion (m) de novo, applying substantive Louisiana law. *Massie v. Inexco Oil Co.,* 798 F.2d 777, 779 (5th Cir.1986). In reaching a definition of the term "operate," we bear in mind that Louisiana contract law requires that "some effect ... be given to every word or clause if possible for a court may not impute to the parties the use of language without meaning or effect." *Lambert v. Maryland Cas. Co.,* 418 So.2d 553, 560 (La.1982). Moreover, Louisiana follows the well-established principle of law that insurance contracts should not be interpreted so as to lead to absurd conclusions. *Fertitta v. Palmer,* 252 La. 336, 344, 211 So.2d 282, 285 (1968); *Caraway v. Royale Airlines, Inc.,* 559 So.2d 954, 959 (La.App. 2nd Cir.1990).

We hold that the District Court correctly interpreted "operate," in the situation of a corporate or individual assured, to mean something more than merely "to drive." Considering Exclusion (m) in its entirety, especially clauses [iii] and [iv], compels the conclusion that Insurer and Western understood that there would have to exist some means by which Western could "operate" the trucks, that is, put them effectively to use.[5] Insurer's contention that the corporation must actually drive the vehicle assumes a physical impossibility and is thus absurd. Practically, Insurer's interpretation would

---

[5]After all, the only way a corporation can act is through its agents and employees. *Chapotel v. Bailey Lincoln–Mercury, Inc.,* 363 So.2d 451, 454 n. 7 (La.1978) (citation omitted). It follows that a corporation can operate a vehicle where the agent or employee operates the truck for the corporation, not necessarily by driving the truck but by controlling the activity of the driver himself. Therefore, once "operate" is given a broad definition, it follows that the corporate entity Western, via its own management personnel who actually dictated the day-to-day routes of the leased trucks, indeed operated the trucks.

As for the various drivers of the trucks, each truck lease in question designated the driver as an "independent contractor" working for Western, nevertheless, such designation is not determinative. Instead, the drivers are regarded by I.C.C. regulation to be Western's statutory employees for the term of the lease. 49 U.S.C. § 11107 (West 1992); 49 C.F.R. § 1057.12(c) (1992); *White v. Excalibur Ins. Co.,* 599 F.2d 50, 52–52 (5th Cir.1979).

effectively write the phrase "operated exclusively by the Insured" out of the policy because, of course, only a human being can be licensed to drive a vehicle.[6] For the phrase to have any meaning at all, it can be interpreted in one way only: Western exclusively operated the trucks by statutorily controlling their use and destination.[7] This interpretation would contemplate the selection of, or acquiescence in the selection by the lessor of, the driver who would thus be doubling in brass to constitute an agent of the lessee and lessor.

This broad definition of "operate" applies to an Insured who is an individual, a collection of individuals, or a legal entity (e.g., a trust). Indeed, as is often the case, the grammatically unacceptable "and/or" works against, not in favor of, the Insurer. As to leased trucks (clause [ii] ), coverage exists if either the truck is [iii] operated exclusively by [iv] the insured, [v] and/or its full time salaried employees or both. In this formula, "operator" (to operate) includes any agent selected by the Insured, or on its behalf by the lessor, whether a full time salaried employee or some other authorized person not a full time salaried employee. Given the accepted usage of the term "and/or,"[8] coverage exists by the literal terms of clauses [iii] and [iv] where a driver furnished by the lessor constitutes an agent of the lessee Insured in operation of the truck. That is, the "or" option of

---

[6]*See* LSA–R.S. 32:401, *et seq.*

[7]Despite the parties' inability to locate any cases defining "operate," this is not the first time the Fifth Circuit has defined the term to mean something more than merely "to drive." *Blue Bird Body Co. v. Ryder Truck Rental,* 583 F.2d 717, 725 n. 4 (5th Cir.1978) (person who directed backing up of truck, though not in actual physical control of truck, nevertheless was operating the truck within the meaning of an insurance policy requiring only lessor or lessor's employees to operate truck); *see also State Farm Ins. Co. v. Coughran,* 303 U.S. 485, 491, 58 S.Ct. 670, 672, 82 L.Ed. 970 (1938) ("The term "operate' has varying meanings according to the context. One may operate singly with his own hands, or jointly with another, or through one or more agents").

Furthermore, the broad definition of operate is consistent with the letter of the I.C.C. regulation governing Western's leases, 49 C.F.R. § 1057.12 (1988), which requires that "the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease" and that "the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. § 1057.12(c) (1988).

[8]"But the words "and/or' commonly mean "the one or the other or both.' " *Local Div. 589, Amalgamated Transit Union v. Massachusetts,* 666 F.2d 618, 627 (1st Cir.1981), *cert. denied* 457 U.S. 1117, 102 S.Ct. 2928, 73 L.Ed.2d 1329 (1982).

"and/or" leaves the condition "full time salaried employees" an unnecessary, optional coverage requirement in this case.

The advantage of this analysis is that the term "operate" has the same definition when the insured is a corporation or an individual or a group of individuals (e.g., a partnership). Additionally, this analysis gives preemptive reading to the overpowering I.C.C. regulations by effectively reading the regulations into the policy. *See* 49 C.F.R. § 1057 (1988); 49 U.S.C. § 11107 (West 1992).

Insurer, as drafter of the policy, chose at its peril not to define the term "operate."[9] Instead, this left it to the District Court to declare the only meaningful definition of the word in the context of this otherwise unambiguous policy. We adopt the District Court's interpretation.

Insurer argues that in Western's responses to Insurer's pretrial requests for admissions, Western admitted that the drivers of the leased trucks "operated" the trucks and that such a response amounts to a judicial admission that "operate" means "to drive."[10] This argument, however, does not bar Western's recovery. Western's admitting that a truck was "operated" by an individual does not imply that the truck was not at the same time operated by Western, the Insured, as well. In fact,

---

[9]In fact, Insurer, as reflected in the paragraph titled DEFINITIONS, chose to define only three policy terms: "truck," "accident," and "unattended."

[10]In Insurer's first request for admissions, Request # 2, which was admitted by Western, read as follows:

> REQUEST NO. 2:
>
> At the time of the incident described in Paragraph 8(a) of the Complaint, the vehicle transporting the damaged cargo was operated by Virgil Riley.
>
> In addition to Request No. 2, Insurer sought five identical admissions, covering the various incidents of loss described in separate paragraphs of his complaint, all of which were admitted by Western. Like Request No. 2 above, these admissions established that the vehicles transporting the damaged cargo were "operated," that is, driven by Terry White, James R. Hensley, Jr., Ronald Gene Little, Richard Palmer and Johnnie Williamson, but, applying our definition of "operated," these drivers were operating the vehicles for Western.

because the drivers were Western's statutory employees, when the drivers operated the trucks, Western operated the trucks.

### Arbitrary, capricious or without probable cause ... NOT!

Louisiana Revised Statutes § 22:658 states that when an insurer fails to pay a claim within thirty days from submission of proof of loss, and when such failure is found to be "arbitrary, capricious, or without probable cause," the insurer shall be subject to a penalty of ten percent of the claim amount, plus reasonable attorneys' fees.

Western unconvincingly argues that because Insurer litigated the coverage issue at its peril, it should, therefore, pay penalties and attorneys' fees simply because, on the determination of two courts, its interpretation of the policy was incorrect. This Court, however, has taken the position that an unfavorable judgment does not automatically subject an insurer to penalties under La.R.S. § 22:658. *Graham v. Milky Way Barge, Inc.,* 824 F.2d 376, 384–385 (5th Cir.1987); *see also Rudloff v. Louisiana Health Services Indem. Corp.,* 385 So.2d 767 (La.1979) (on rehearing) (a finding in favor of coverage but against fees and costs is not always inconsistent). Here, Western failed to introduce any evidence to the District Court that Insurer acted arbitrarily, capriciously, or without probable cause and now alleges no reason for such a finding on appeal other than the adverse verdict below. Moreover, our analysis of the coverage issue has shown that Insurer's interpretation of the language contained in Exclusion (m), although erroneous, is not so unreasonable as to support a finding that Insurer violated LSA—R.S. § 22:658. Therefore, the District Court was correct in denying summary judgment on Western's penalty and attorneys' fees claims.

### End of the road

We affirm the summary judgment in favor of Western and conclude that the policy covered each of Western's six cargo claims. Additionally, we affirm the summary judgment in favor of Insurer that denial of coverage was not arbitrary, capricious or without probable cause.

AFFIRMED.


GARWOOD, Circuit Judge, joined by EMILIO M. GARZA, Circuit Judge, concurring specially:

I join in the affirmance, and I agree with the holdings on penalties and attorneys' fees and that exclusion (m) is inapplicable. As to exclusion (m), however, I rely on its paragraph (b) rather than the second clause of its paragraph (a). The force of Judge Brown's reasoning as to the second clause of paragraph (a) ultimately derives from the assumption that all insureds are corporations. The policy, however, appears to contemplate the not unreasonable possibility that the insured may be an individual (*e.g.,* paragraph (a) uses the personal pronoun "him" and "his," not "it" or "its" as would be appropriate if all insureds were corporations). Thus, the presence in paragraph (a)'s second clause of the words "the Insured" is necessary to allow coverage under (a) when the vehicle is driven by the insured, as well as when it is driven by "his own full time salaried employees." The later phrase, however, plainly indicates an intention to *exclude* from (a) vehicles driven by agents of the insured who are not his full time employees. To construe paragraph (a)'s "operated" to cover operations on behalf of the insured by his agents—as Judge Brown does—is necessarily to bring within paragraph (a) vehicles driven by the insured's *part time* employees, which is what (a) facially intends to *exclude.*\*\*\*\*\*\*\*\*\*\*\* Paragraph (b), however, contains nhing comparable to indicate an intent to exclude agency operation; nor does (b) contain (a)'s restrictive "exclusively." An "owner operator" need not be an individual, and indeed one of the six claims at issue here involves a corporate owner operator. Paragraph (b) is hence ambiguous as applied to the situation where the leased truck is driven by the owner operator's employee. Such ambiguity regarding the scope of exclusion (m) is

---

\*\*\*\*\*\*\*\*\*\*\*Judge Brown correctly notes that the words "and/or" in paragraph (a) mean "the one or the other or both," with the result that paragraph (a)'s "operated exclusively by" requirement may be fulfilled if the truck is "operated exclusively" either by the insured, or by his own full time salaried employees, or by both the insured and his own full time salaried employees. From this common sense observation, Judge Brown draws the remarkable conclusion that the "operated exclusively by" requirement is fulfilled if the truck is operated exclusively by an agent of the insured who is not the insured's full time employee, from which it would necessarily follow that the requirement would also be fulfilled by operation exclusively by the insured's *part* time employees, contrary to the facially evident intention of paragraph (a) to *exclude* that situation.

properly resolved against the insurer under Louisiana law.