BROWN, Judge,
dissenting.
F.T.E. and his brother inherited equally. Despite his malady, F.T.E. prospered while his brother lost his wealth. This court found, in a previous appeal, that F.T.E. was mentally capable of managing his affairs and not gravely disabled within the contemplation of the commitment statute. We ordered a limited interdiction solely because F.T.E. at times refused to follow his physician’s treatment plan. We believed that his sitters should have the authority to assure' his physical well-being by enforcing the doctor’s orders. Thus, in this limited circumstance, the sitters would be answerable to someone other than F.T.E.
At the inception of this odyssey, F.T.E. lived at home and competently managed his affairs. In April 1990 F.T.E. was involuntarily taken from his home and thereafter denied control of his affairs. F.T.E. remained, at his expense, involuntarily confined to a nursing home until May 1992 when the trial court implemented this court’s opinion. Interdiction of F.T.E., supra.
This matter began when F.T.E.’s brother hired a law firm to gain control over F.T.E.’s affairs through commitment and interdiction proceedings. Legal representation for F.T.E. was provided by a public agency. When this case finally concluded, F.T.E. was returned to his home with full control of his affairs. F.T.E. agreed to a revocable trust to pay the expenses of the limited curatorship over his person. In short, the brother’s effort to take over F.T.E.’s estate failed.
The law firm retained by the brother demanded legal fees and expenses of approximately $80,000 for its services “on behalf of F.T.E.” The majority opinion significantly reduced to $38,219 the attorney fees and expenses awarded to the brother’s attorney. This amount, however, still consumes a large part of F.T.E.’s estate, an estate that is desperately needed to provide for the necessities demanded by his medical condition.
Because petitioner was not successful in his attempt to take over F.T.E.’s estate, he is not automatically entitled to costs which include legal fees. LSA-C.C. Art. 397; LSA-C.C.P. Art. 4551. Under the particular circumstances of this case, I believe the trial court abused its discretion in awarding any legal fees for F.T.E.’s unsuccessful brother.
In addition, as demonstrated by the facts of this case, to award attorney fees to the brother would violate the idea of fairness inherent in our constitution. The prospect of paying his own and his opponent’s attorney fees regardless of the outcome would have a “chilling effect” on a defendant’s desire to fight such an action.
I further find that the attorney fees even as reduced by this court are unreasonable. The claim of 661.4 hours expended on this *674 case appears to be bloated. The issue at trial was primarily factual, yet 277 hours (34.6 eight hour days) were claimed for research and pleadings. The 94 hours (11.75 eight hour days) claimed for interviewing witnesses represented more than four hours per witness. Although their offices were within a block of the appeals court and Caddo courthouse, 80 hours (10 eight hour days) were claimed for in-court time. I cannot agree that this case necessitated the use of two attorneys. Common sense dictates that the billing exhibit for 661.4 hours be given no evidentiary weight.
In Caraway v. Royale Airlines, 559 So.2d 954 (La.App.2d Cir.1990), reversed in part, 579 So.2d 424 (La.1991), this court affirmed an award of $10,000 in attorney fees. Caraway involved complicated factual and legal issues; removal to federal court and then remand back to state court; two days in Dallas, Texas, taking medical depositions; a full day trial on the merits; and plaintiff’s attorney’s success in winning a large judgment which included approximately $78,000 in penalties. Caraway was also argued successfully by plaintiff in the Supreme Court where penalties were assessed against both insurers (the appellate court had allowed penalties against only one insurer). This interdiction proceeding was not comparable to Caraway. Accordingly, I believe the attorney fees awarded by this court are extravagant.
From April 1990 until May 1992, F.T.E. wrongly suffered a “civil death.” The expenses of his involuntary confinement were paid by F.T.E., including his brother’s travel expenses from Texas to Shreveport. It is not right for F.T.E. to now pay his unsuccessful brother’s legal fees.
I am reminded of Hemmingway’s The Old Man and the Sea, where Santiago lost his catch to sharks who tore off large chunks of meat, “like a pig to a trough.” I respectfully dissent.
Before NORRIS, LINDSAY, HIGHTOWER, BROWN and WILLIAMS, JJ.