655 So.2d 590 (1995)
Catherine D. Weeks & Don C. WEEKS, Plaintiffs-Appellants,
v.
The BOSSIER PARISH SCHOOL BOARD, et al., Defendants-Appellees.
No. 26927-CA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1995.
*591 Sockrider, Bolin & Anglin, James E. Bolin, Jr., Shreveport, for appellant.
Ronald V. McKneely, Jr., Bossier City, Blanchard, Walker, O'Quin & Roberts, Paul M. Adkins, Shreveport, for appellee.
Before SEXTON and WILLIAMS, JJ., and GUIDRY J. Pro Tem.
WILLIAMS, Judge.
This is a suit to recover health insurance benefits. The plaintiffs, Catherine D. Weeks and Don C. Weeks, appeal the trial court's decision granting summary judgment in favor of the defendants, Bossier Parish School Board and Pan-American Life Insurance Company. The trial court found that the medical expenses were not covered by the defendants' health plan. We affirm the judgment of the trial court.

FACTS
Catherine Weeks, while employed as a teacher by the Bossier Parish School Board ("School Board"), obtained health insurance coverage for herself and her family through her employer. The School Board was self-insured, and its health insurance plan was administered by Pan-American Life Insurance Company ("Pan-American"). The family's coverage was in effect on October 12, 1992, when the Weeks' 17-year-old son, Don C. Weeks, II, shot himself in the head in an apparent suicide attempt. Don was taken to the LSU Medical Center, where he was treated until pronounced dead the following day. The Weeks incurred some $33,759.00 in medical bills for the treatment of their son. They sought recovery through Mrs. Weeks' health insurance plan.
The only matter at issue in the trial court was whether coverage existed under the insurance plan. The defendants moved for summary judgment, contending that the medical expenses for treating Don were not covered because they arose out of a self-inflicted gunshot wound. The plaintiffs moved for partial summary judgment seeking an adjudication that the medical expenses were covered under the health insurance plan. The trial court granted the defendants' motion for summary judgment, denied the plaintiffs' motion for partial summary judgment, and dismissed the plaintiffs' case. The plaintiffs appeal, specifying as error the trial court's holding that the medical expenses for Don's treatment were not covered by the defendants' health insurance plan.

DISCUSSION
A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966(B). A summary judgment may be rendered on the issue of insurance coverage alone. LSA-C.C.P. Art. 966(D). Appellate courts review summary judgment de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Broom v. Leebron & Robinson Rent A Car, Inc., 626 So.2d 1212 (La.App.2d Cir.1993).
Where the meaning of a contract is to be determined solely from words upon its face, and without necessity of extrinsic evidence, appellate courts are as competent to review evidence as trial courts, and no special deference *592 is usually accorded the trial court's findings. Schroeder, supra. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. Art. 2046. The words of a contract must be given their generally prevailing meaning. LSA-C.C. Art. 2047. In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. LSA-C.C. Art. 2056.
This court has previously set forth the law regarding interpretation of insurance policies as follows:
An insurance policy is a contract between the parties and the rules established for the construction of written agreements also apply to contracts of insurance. The intention of the parties is of paramount importance in interpreting insurance contracts. Their intention is to be determined in accordance with the plain, ordinary and popular sense of the language used in the agreement and by giving consideration on a practical, reasonable and fair basis to the instrument in its entirety. An insurance contract should not be given an interpretation which would act to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or which would lead to an absurd conclusion. Courts do not have authority to change or alter the terms of an insurance policy under the guise of interpretation when such terms are couched in clear and unambiguous language. It is well-settled that ambiguous clauses in policies of insurance are to be construed against the insurer and in favor of the insured. In order to be ambiguous an insurance contract must not be only susceptible of two or more interpretations but both interpretations must be equally reasonable.
Caraway v. Royale Airlines, Inc., 559 So.2d 954 (La.App.2d Cir.1990), affirmed in part, reversed in part, on other grounds, 579 So.2d 424 (La.1991).
In the instant case, the facts are not in dispute; the only issue is how to construe the insurance policy. The group benefits program provided through the School Board provides for 1) life benefits; 2) accidental death, dismemberment and loss of sight benefits; 3) medical benefits; and 4) dental benefits. The plaintiffs seek recovery under the medical benefits plan. Within the medical benefits provisions, "accidental bodily injury/injury" is defined:
"physical pain, illness or impairment of a physical condition to a Covered Individual that is:
A. Unforeseen;
B. Unexpected;
C. Involuntary; and
D. Due to violent and external means."
"Illness" is defined:
"A. A disorder or disease of the mind or body; or
B. A pregnancy."
"Sickness" is not defined in the plan. Generally, the plan provides that benefits are paid for hospital expenses, surgical expenses, and in-hospital medical care expenses if they result from "accidental injury or sickness ..." The requirement for payment of major medical benefits, however, is that the services result from "illness or accidental bodily injury." Certain additional accident expense benefits may be paid if they result from an "accidental bodily injury."
It is undisputed that Don's gunshot wound was self-inflicted. The plaintiffs contend, however, that the fact that the initial injury was self-inflicted does not defeat coverage. They argue that Don's treatment was for "illness" or "sickness" and, as such, is covered by the policy. Noting that the plan's definition of "illness" includes "disorder" and "disease," the plaintiffs cite a dictionary definition of "disorder" ("an abnormal state of body or mind") and "disease" ("an alteration of the living body that impairs its functioning"). They urge that, considering these definitions for "disorder" and "disease," the medical treatment Don received prior to his death was for "illness."
The plaintiffs also contend that the policy is ambiguous because it does not define "sickness." The plaintiffs note that the accidental death, dismemberment and loss of sight benefits section of the policy, unlike the *593 medical benefits section, has a specific exclusion of coverage for "self-destruction or attempted self-destruction while sane or insane." They note, also, that more than thirty limitations or exclusions are specified in the medical benefits section of the policy. Thus, the plaintiffs argue, the drafter could have provided a specific exclusion for medical expenses arising from self-inflicted injury or death, had the drafter chosen to do so. The plaintiffs argue that the resulting ambiguity should be construed against the drafter.
The defendants maintain that the policy envisions two general categories of coverage, one stemming from accidental injuries and the other stemming from illness or sickness. They argue that since Don's self-inflicted wound was not unforeseen, unexpected or involuntary, the condition does not fall within the plan's definition of accidental injury. They also argue that "sickness" and "illness" are synonymous and, therefore, it is of no significance that the plan does not define "sickness." Urging that gunshots cause injury, not sickness, the defendants argue that the common usage and generally accepted meanings of the terms in question indicate that Don was not treated for "sickness" or "illness." Additionally, the defendants contend that the language of the plan is clear and unambiguous and therefore, must be enforced as written.
The defendants further argue that the accidental death, dismemberment, loss of sight section of the plan, which includes a specific exclusion for "self-destruction or attempted self-destruction," provides no guidance in regard to the medical benefits provisions. That exclusion, the defendants contend, makes no attempt to exclude self-inflicted injuries from the scope of sickness or illness, because benefits are not paid for sickness or illness under that section of the plan.
After a review of the record in its entirety, including a careful reading of the insurance contract, we do not find the language of the plan to be ambiguous. The fact that the plan, which provides a definition for "illness," fails to define "sickness" does not render the contract ambiguous. While we are aware of no Louisiana jurisprudence holding that the two words are synonymous, in common usage "sickness" and "illness" are interchangeable.[1] Nor, in the instant case, does the absence of a specific exclusion for self-inflicted injury create ambiguity.
Medical benefits are effectively excluded for a self-inflicted injury by the plan's definition of "accidental bodily injury/injury." The plaintiffs ask us to consider wounds resulting from a gunshot as "sickness" or "illness." However, to construe "illness" or "sickness" so as to include wounds resulting from a self-inflicted gunshot, without more, would give an interpretation that would enlarge the instant plan's provisions beyond what is reasonably contemplated by its terms. Our interpretation of the contract must give effect to the plain, ordinary and popular sense of the language used in the agreement. Relying on the generally prevailing meaning of the words, Don was treated for a self-inflicted "injury" rather than for "sickness" or "illness."
While the sympathy of the court lies with the Weeks for the loss of their son, we do not have the authority to alter the terms of an insurance policy under the guise of interpretation when the terms of the policy are clear. Accordingly, the summary judgment rendered by the trial court is affirmed.

CONCLUSION
For the foregoing reasons, the summary judgment of the trial court is affirmed. The cost of this appeal is assessed to Catherine D. Weeks and Don C. Weeks.
AFFIRMED.
NOTES
[1] See, for example, Webster's New World Dictionary (3rd College Edition 1988), which uses "sickness" in defining "illness" and "illness" in defining "sickness."